## MERRILLS *against* SWIFT and another.

Where there is an absolute delivery of the instrument, by the grantor, as his deed, to a third person, for the benefit of the grantee ; neither the presence of the grantee, nor his previous authority to such third person, to receive it on his behalf, nor his subsequent express assent to it, is necessary to make the delivery valid.

Therefore, where *A*, being indebted to *B*, and in failing circumstances, in the absence and without the knowledge of *B*, who resided out of the state, procured *C*, an attorney at law, to draw a mortgage deed of certain lands from *A* to *B*, to secure such indebtedness, *A* executed the deed, and delivered it to *C*, for the benefit of *B*, requesting *C* to cause it to be recorded and handed to *B* ; it was accordingly recorded, the next day after its execution ; and some time afterwards it was received and accepted by *B* ; it was held, that there was a good delivery of the deed to *B*, and it immediately vested in him a title to the lands which it purported to convey.

*A*, to secure his indebtedness to *B*, executed to him a mortgage, with this condition : " If I shall well and truly pay to *B*, on demand, with interest, the sum of 1500 dollars, which I am indebted to him, on book and by several notes, the exact date and amount not recollected, but amounting in the whole, together with the debt on book, to the sum of 1500 dollars, or thereabouts, then this deed shall be void." When the mortgage was given, *A* was in failing circumstances, and it was necessary, in order to secure his indebtedness to *B*, that the mortgage should be given immediately, and before a more perfect description of the debts intended to be secured could be had. The amount of *A's* indebtedness to *B*, at this time, exceeded 1500 dollars. Held, that such mortgage was valid, as against the other creditors of *A* and subsequent incumbrancers. [By two Judges, including the Chief Justice, against two ; the fifth being absent.]

Where a mortgage was given to secure a promissory note, which had run long enough to be barred by the statute of limitations, but was unpaid and due ; it was held, that the maker, by giving the mortgage, waived the benefit of the statute, and the mortgage was a valid security.

Where a promissory note, given by *A* to *B*, had been negotiated by *B* before it was due ; but *B*, finding that *A* would not be able to pay it at maturity, sent the money to *A*, who, at the request of *B*, and as his agent, paid it over to the holder of the note and took it up ; it was held, that the effect of this transaction was, to reinstate *B* as the proprietor of the note, and enable him to recover on it, in the same manner as if it had never been negotiated.

THIS was a bill for the foreclosure of a mortgage.

The case stated and found was as follows. *William Swift,* one of the defendants, being the owner in fee of the lands described in the bill, subject to certain prior mortgages, and being also in embarrassed and failing circumstances, on the 11th day of *February*, 1845, in the absence and without the

\* The terms of the court, in some of the counties, were, by authority of the legislature, holden, this year, at different times from those prescribed by the general law ; but the reporter deems it advisable to insert the cases in the usual order.

knowledge of the plaintiff, who then resided in *Lee* in the state of *Massachusetts*, applied to an attorney at law in the city of *Hartford*, and requested him to draw a mortgage deed of said lands to the plaintiff; which such attorney accordingly did in conformity with the instructions given him. This deed contained the following condition: "Provided, if I shall well and truly pay to the said *William Merrills*, on demand, with interest, the sum of 1500 dollars, which I am indebted to him on book, and by several notes, the exact date and amount not recollected, but amounting in the whole, together with the debt on book, to the sum of 1500 dollars, or thereabouts, then this deed shall be void." *Swift*, having duly executed such deed, delivered it to said attorney, for the benefit of the plaintiff, and requested him to cause it to be recorded, and handed to the plaintiff. The deed was accordingly duly recorded, on the 12th of *February*, 1845; and sometime afterwards, it was received and accepted by the plaintiff.

The plaintiff had previously requested *Swift* to give him security for his indebtedness; but there was no agreement on the part of *Swift* to give the plaintiff any mortgage, prior to the execution of the deed in question.

At the time of the execution of this deed, there was pending in the superior court for the county of *Hartford*, an action at law, in favour of *Lemuel Howlett*, the other defendant, against *Swift*, for the recovery of a certain debt against him; which action, at a previous term of the court, had been referred to an auditor, who had made his report, in which he had found that *Swift* was indebted to *Howlett* in the sum of 417 dollars, 40 cents. This report, at the time of executing said deed, had not been accepted by the court, but was afterwards, on the 13th of *February*, 1845, accepted, and judgment was rendered in the action in favour of *Howlett*, for that sum, and for 84 dollars, 59 cents, costs of suit. On this judgment, *Howlett* instituted a suit against *Swift*, and caused said lands to be attached as his property, by writ of attachment, bearing date, *February* 13th, 1845, which was duly returned and entered in the docket of the court, in which it is still pending, and the premises are still subject to the lien created thereby. This attachment was not made, until after said mortgage deed had been executed and recorded, but was made before any delivery of it, by the attorney, to the plain-

tiff, and before the plaintiff had any knowledge that it had been executed.

It did not appear, that *Howlett*, at the time of his attachment, had any knowledge of said mortgage, or of *Swift's* indebtedness to the plaintiff, except what may be implied from the record of the deed.

At the time of the execution of the deed, *Swift* was indebted to the plaintiff, by three promissory notes, described in the bill, one dated the 23rd of *April* 1827, for 429 dollars, 81 cents, payable five days after date, with interest, on which 210 dollars had been paid and indorsed ; another, dated the 18th of *August* 1843, for 350 dollars, payable at the *Farmers and Mechanics Bank*, ninety-five days after date ; and one dated *October* 6th, 1844, for 543 dollars, 93 cents, payable four months after date, at the *Phœnix Bank*, in *Hartford ;* also a book account, on which there was due to the plaintiff 180 dollars, 55 cents ; unless such indebtedness is to be barred, so far as *Howlett* is interested, by the following facts. No evidence was adduced, on the trial, to show, that the recovery of the sum specified in the first mentioned note was not barred by the statute of limitations, except the testimony of *Swift*, who was called as a witness by the plaintiff, and testified, that it had never been paid, and was still due. With respect to the last mentioned note, the court found, that before the sum due thereon had become payable, the plaintiff had indorsed and assigned it ; but finding that *Swift* was unable to pay it, when it arrived at maturity, the plaintiff sent the money to him, and requested him to go to the bank where it was made payable, and pay it and take it up, and deliver it to him ; which *Swift* accordingly did, with the money so furnished by the plaintiff.

At the time of the execution of the mortgage deed, the two first mentioned notes were in the possession of the plaintiff ; but there was no evidence that the last mentioned note had been returned to the plaintiff by *Swift*, after its payment at the bank, until after the attachment.

The value of the mortgaged premises, over the known incumbrances thereon, amounted to 750 dollars.

The case was reserved, upon the question whether the plaintiff was entitled to any decree, and if so, to what decree, against *Howlett*, for the consideration and advice of this court.

*Hungerford* and *Bulkeley*, for the plaintiff, contended, 1. That the mortgage was not void, with respect to *Howlett*, from any uncertainty in the description of the debt. *Stoughton* v. *Pasco*, 5 *Conn. R.* 442. *Crane* v. *Deming*, 7 *Conn. R.* 388. *Booth* v. *Barnum*, 9 *Conn. R.* 285. *Chester* v. *Wheelwright*, 15 *Conn. R.* 562. *Frink* v. *Branch*, 16 *Conn. R.* 274.

2. That the delivery of the deed to the attorney who drew it, for the use of the mortgagee, was a good delivery. *Halluck* v. *Bush*, 2 *Root* 26. *Belden* v. *Carter*, 4 *Day* 66. *Buffum* v. *Green*, 5 *N. Hamp. R.* 71. *Church* v. *Gilman*, 15 *Wend.* 656. *Elsey* v. *Metcalf*, 1 *Denio* 323. 5 *Watts*, 343. 4 *Day*, 159. 2 *Conn. R.* 637. 1 *N. Hamp. R.* 353. 9 *Mass. R.* 307.

3. That the statute of limitations had the effect of suspending the *remedy* for enforcing the payment of the note of the 23rd of *April* 1827, but not the consideration, or the duty of *Swift* to pay the balance due upon it ; and *Swift* had a right to waive the statute, if he chose to do so. 1 *Sw. Dig.* 304. *et passim.* *Belknap* v. *Gleason*, 11 *Conn. R.* 160.

4. That the note at the *Phœnix Bank* having been taken up by *Swift*, as the agent of *Merrills*, with his funds and for his benefit, he is to be treated as the owner thereof, as in truth he is, and may sustain a suit upon it, even at law, and *a fortiori* in equity. *Bond* v. *Storrs*, 13 *Conn. R.* 412. 415.

*Toucey* and *Goodman*, for the defendant *Howlett*, contended, 1. That the mortgage to *Merrills* having been executed in his absence, without his knowledge, and not in pursuance of any previous agreement, his subsequent act of acceptance, without which there could be no delivery, does not entitle him to any priority over the previous act of another creditor attaching the same land. *Dunton* v. *Perry*, 5 *Verm. R.* 382. *Hedge* v. *Drew*, 12 *Pick* 141. *Jackson* d. *Eames* v. *Phipps*, 12 *Johns. R.* 421. *Sparrow* v. *Smith*, 5 *Conn. R.* 113.

2. That the mortgage to *Merrills* is void for uncertainty, as against the attaching creditor ; because it does not ascertain or in any manner describe either of the three promissory notes or the book debt now claimed to be secured by it, so as to give any record notice of the subject matter of the mortgage, or guard against substitution. *Pettibone* v. *Griswold*, 4 *Conn. R.* 158. *Stoughton* v. *Pasco*, 5 *Conn. R.* 442. *Shepard*

v. *Shepard*, 6 *Conn. R.* 37. *Crane* v. *Deming*, 7 *Conn. R.* 387. *Booth* v. *Barnum*, 9 *Conn. R.* 286. *North* v. *Belden*, 13 *Conn. R.* 376. *Sanford* v. *Wheeler, Id.* 165. *Hart* v. *Chalker*, 14 *Conn. R.* 77.

[The other objections to a decree for the plaintiff were not much insisted on.]

STORRS, J.   It is in the first place, contended, by *Howlett*, the only defendant who appears in this case, that there was no delivery of the deed in question to the plaintiff, by *Swift*, previous to the attachment, by *Howlett*, of the land embraced in it.   It is essential to the validity of a deed that it should be delivered by the grantor, and accepted by the grantee.   A deed takes effect only from its delivery ; and there can be no delivery without acceptance, either express or implied.   They are necessary simultaneous and correlative acts.   *Jackson* d. *Ten Eyck* & ux. v. *Richards.* 6 *Cow.* 617.   As there can be no delivery without acceptance, a deed cannot be delivered where there is no person to receive it.   *Jackson* d. *Eames* v. *Phipps*, 12 *Johns. R.* 421.   And it must be delivered as the deed of the grantor, and not to any other intent.   "A delivery of a deed is either actual,—*i. e.* by doing something and saying nothing—or else verbal,—*i. e.* by saying something and doing nothing ; or it may be by both.   And either of these may make a good delivery and a perfect deed.   But by one or both of these means it must be made ; for otherwise, albeit it be never so well sealed and written, yet is the deed of no force.   And though the party take it to himself, or happen to get it into his hands, yet it will do him no good, nor him that made it any hurt, until it be delivered." 1 *Touchst.* 57. *Ow.* 95. *Yelv.* 7. 1 *Leon.* 140.   Therefore a delivery of a deed, where actual and not verbal, does not consist of the mere act of handing or transmitting it either to the grantee or another person, but of that act and of the intention with which it is done ; although the possession of it by the grantee may be evidence of the intent with which he received it.   It must be delivered to the use of the grantee.   In this case, the court finds, that before said attachment, *Swift* executed the deed, and delivered it to a third person for the benefit of the plaintiff, and requested him to cause it to be recorded, and handed to the plaintiff, which was accordingly done ;

although it does not appear that it was received by the plaintiff before the attachment by *Howlett.* It was, therefore, an absolute delivery by the grantor of the instrument, as his deed, to a third person, for the use of the grantee. These circumstances, according to all the authorities on this subject, constituted a good delivery of the deed to the plaintiff, and immediately vested in him a title to the land conveyed by it. They all agree, that neither the presence of the grantee, nor his previous authority to a third person to receive it on his behalf, nor his subsequent express assent to it, is necessary to make the delivery of a deed valid. Where there is no such previous authority to receive it, his assent is presumed where the deed is beneficial to him, although his dissent may be shown, and the deed thereby rendered ineffectual. *Camp* v. *Camp,* 5 *Conn. R.* 291. *Jackson* d. *Pintard* v. *Bodle,* 20 *Johns. R.* 184. *Halsey* v. *Whitney,* 4 *Mason* 20. But here, his express assent is shown, by his subsequent reception and acceptance of it. If the deed had been delivered as an escrow, a different question would be presented ; but here the delivery was absolute and unconditional. It is said in the *Touch-stone, vol.* I. *pp.* 57, 58. that "a delivery of a deed may be made to the party himself to whom it is made, or to any other by sufficient authority from him ; *or it may be delivered to any stranger, for and in the behalf, and to the use, of him to whom it is made, without authority ;* but if it be delivered to a stranger, without any such declaration, intention or intimation, (that is, of the use,) unless it be in case where it is delivered as an escrow, it seems this is is not a sufficient delivery." In the present case, there is not only no ground to claim it was delivered as an escrow, but it is found to have been absolutely delivered, and for the benefit of the grantee. We find no case on the subject where the same doctrine is not approbated; and it is expressly sanctioned in many, among which are *Belden* v. *Carter,* 4 *Day* 66. *Wheelwright* v. *Wheelwright,* 2 *Mass. R.* 447. The fact, that no time was limited, in the present case, for the delivery of the deed to the plaintiff, makes it stronger than those which have been cited, in which it was to be delivered over on a future event, *viz.* the death of the grantor, and where, notwithstanding that circumstance, it was held, that it became the deed of the grantor presently. *Hatch* v. *Hatch,* 9 *Mass. R.* 307. *Ruggles* v. *Lawson,* 13

*Johns. R.* 285. *Church* v. *Gilman*, 15 *Wend.* 656. *Buffum* v. *Green*, 5 *N. Hamp. R.* 71. *Jackson* d. *Eames* v. *Phipps*, 12 *Johns. R.* 418. *Doe* d. *Garnons* v. *Knight*, 5 *B. & Cres.* 671. (12 *E. C. L.* 351.) *Exton* v. *Scott*, 6 *Sim.* 31. In the cases cited by the defendant on this point, either the writing was an escrow, and delivered over before the event happened on which it was to take effect; *Sparrow* v. *Smith*, 5 *Conn. R.* 113. or there was no delivery in fact of the writing, as the deed of the grantor, either to the grantee or to any other person for his use; and on these grounds, they were held to be inoperative. 12 *Johns. R.* 418. 10 *Mass. R.* 456. *Elsie* v. *Metcalf*, 1 *Denio* 323. *Dunton* v. *Perry*, 5 *Verm. R.* 382. These cases are, therefore, inapplicable to the present.

It is claimed, in the next place, that the debts intended to be secured, by the mortgage in question, are not described in it with sufficient certainty to render it operative against *Howlett*, who is a subsequent incumbrancer. The condition of the deed is, that *Swift* " shall well and truly pay to the said [the plaintiff] on demand, with interest, the sum of 1500 dollars, in which sum [the said *Swift*] is indebted to said [the plaintiff] on book, and by several notes, the exact date and amount of which are not recollected, but amounting in the whole, together with the debt on book, to the sum of 1500 dollars, or thereabouts." The bill, after setting forth the mortgage, and describing particularly the items of indebtedness by book and notes, which the mortgage was intended to secure, alleges, that when said mortgage was given, neither of said notes nor said book account was present; that neither the precise amount of either, nor the dates of said notes, nor the sums for which the same were given, nor the time when they were payable, was recollected or known; that a more particular description thereof could not then be given; that the said *Swift*, being then in embarrassed and failing circumstances, it was necessary that said mortgage should be taken immediately, and before a more perfect or accurate description of said debts could be paid or set forth in said condition; and that the plaintiff would otherwise have been deprived of all security therefor, and wholly lost said debts. The finding of the court does not pass upon each of these allegations specifically, but it is sufficient to show them to be substantially true; and the indebtedness of *Swift* to the plaintiff, as

found, exceeds the sum mentioned in the condition of the mortgage. We have, then, before us, a mortgage, executed in good faith, to secure an absolute and honest indebtedness, the character and amount of which is truly described in its condition, and with as much particularity as was practicable, under the circumstances of the case; where a want of greater precision was not owing to any negligence or fault of either of the parties to the transaction; and where, moreover, lest the other creditors of the mortgagor might be eluded or left in doubt as to the extent of the incumbrance created, by an entire want of definiteness or particularity as to its amount, a sum was limited, less than the amount of said indebtedness, beyond which the mortgage could not be available as a security against such creditors. That such a mortgage would, according to the ordinary principles of law, as administered by the courts of law and equity, and independent of our registry laws and the policy to which they have given rise, be sustained against subsequent incumbrancers, there is no doubt. The question, therefore, is, whether it can be so sustained, consistently with the maintenance of those laws in their true meaning and spirit.

We appreciate the importance of having the title to real estate appear upon record, which is the great object of those laws, and of giving such a construction to them that this salutary object shall be fully accomplished; and we are not disposed to sanction any relaxation of the strictness of description which has been hitherto required in mortgages of real estate, in relation to the incumbrances created by them; nor to impugn or weaken, in the least degree, the force of our decisions on that subject. But a majority of the court are of opinion, that the deed in question ought to be supported, not only against the mortgagor, but against subsequent incumbrancers, as a security for the sum mentioned in the condition; and that, in holding it to be valid to that extent, we neither infringe our recording acts, nor the decisions which have been made under them.

The general principle established with respect to mortgages, is, that to render them valid against creditors and purchasers, they must give reasonable notice of the incumbrances created by them. *Stoughton* v. *Pasco,* 5 *Conn. R.* 442. But, although this principle is settled, and its justness readily ac-

knowledged, there is no inconsiderable difficulty in the application of it. It is too general in its terms to furnish, of itself, a test for particular cases. The question therefore arises in each of them, what is reasonable notice? And this must necessarily depend on the nature or character of the incumbrance. But, whatever this may be, the record should, as expressed by Ch. J. *Williams*, in *Hart* v. *Chalker*, 14 *Conn. R.* 79. disclose, with as much certainty as the nature of the case will admit, the real state of the incumbrance. By this is intended, not that a description, or a more certain one, of the incumbrance, is dispensed with, because it happens, from the accidental situation of the parties at the time, not to be in their power to furnish it; but that the character of the debt or liability to be secured is itself to determine what degree of certainty in its description is requisite. Hence, as has been uniformly held, it is necessary that the nature of the debt or liability should be stated in the mortgage; as, for instance, whether the debt is by bond, note or book; and, also, that its nature should be stated truly; therefore, a mortgage to secure an absolute note, will not be sustained where such note was given to secure a contingent liability of the mortgagee for the mortgagor; as, for instance, an indorsement by the latter for the former. *Sanford* v. *Wheeler*, 13 *Conn. R.* 165. *North* v. *Belden, Id.* 376. In these two particulars, it is admitted, that the deed in question is unexceptionable. But it is claimed, that it is also necessary that the amount of the debt secured should be stated in the mortgage, and, where there are several debts, the amount of each; and that, in this respect, the description in this deed is insufficient. It may, for the present purpose, be admitted, that where a book debt or promissory note is secured by mortgage, it is not sufficient to state in it merely that there is an indebtedness from the mortgagor of that kind, without stating further the amount of that indebtedness, although it may admit of a question, whether an error in the statement of the amount, will, under all circumstances, be fatal to the security as against subsequent incumbrancers. *Booth* v. *Barnum*, 9 *Conn. R.* 286. It is unnecessary to examine those points here, because in this case, we think, that there is no room for the objection, either that the amount of the indebtedness intended to be secured is omitted, or untruly stated, in the condition of the mortgage. It states, that the

notes and the book debt therein mentioned, amount to the sum of 1500 dollars, or thereabouts ; and it appears from the finding of the court, that the indebtedness of the mortgagor on them, somewhat, although not greatly, exceeded that sum. The description, in this respect, is disadvantageous to him, and not to the mortgagee.    The statement of the amount due, is, therefore, strictly true.    It has not been claimed, that the addition of the words, " or thereabouts," which implies that there is no considerable variation from the sum to which they are annexed, detracts essentially from the definiteness of the statement.    In *Booth* v. *Barnum,* 9 *Conn. R.* 286. where the amount of a book debt was specified, though untruly, with the addition of the same words, it was held, that the security was not thereby impaired.

But it is insisted, that the description of the indebtedness should have been more particular ; and that the amount not only of the book debt, but of each of the notes, constituting the aggregate amount of the indebtedness mentioned in the condition, together with the date and other terms of those notes, should have been specified.    This appears to us to be, in this case, an objection, rather for want of particularity, than of certainty in the description.    Such particularity, or distinct enumeration of facts or circumstances as is necessary in order to disclose the incumbrance with reasonable certainty, is undoubtedly requisite to constitute the notice of it, which was intended to be furnished by our recording acts: but a greater degree of particularity than this would be superfluous. The nature of the indebtedness secured by the deed in question, is clearly disclosed in the condition, and the particularity insisted on by the defendant, would shed no additional light upon it.    It is stated to consist of a book debt due from, and promissory notes executed by, the mortgagor, to the mortgagee.    The character of the indebtedness would obviously be made no more plain, by an enumeration or description of the items composing the one, or the terms of the other.    As to the amount of the indebtedness, it is, as has been already said, stated truly, although the amount of each particular portion of it is not given.    We perceive no substantial reason why this should be required.    The object of stating the amount of the indebtedness would seem to indicate what degree of particularity, in this respect, is necessary.    That object is, that credi-

tors and purchasers may be enabled to know the extent of the incumbrance. But is not the extent of it as fully shown, by stating the amount of the whole indebtedness, as by enumerating its several parts? And of what importance is it, in this respect, to subsequent incumbrancers, whether it consists of one note or many; or what is the amount, date, or other terms of each? If they are truly informed, in either of these modes, of the nature and amount of the incumbrance, they have all the knowledge that is necessary to enable them to regulate their conduct with regard to the property; and this constitutes that reasonable notice, which is required, by our recording acts, to be furnished. And we discover no more reason, where several notes are secured by a mortgage, to require that the amount, date, and other terms of each shall be set forth, than that, where a book debt, made up of several distinct items of indebtedness, is secured in the same manner, each of those items and their respective amounts, shall be particularized; a minuteness of statement which has never been deemed necessary. To exact such particularity would be extremely and unnecessarily severe; and would oftentimes be productive of the greatest injustice, by rendering the acquisition of security impracticable. The case now before us, which is not of unusual occurrence, strikingly shows the injustice which such a rule would frequently produce. Indeed, under the operation of it, it would be necessary that those who might have occasion to take security on real estate, should always be at the trouble to have about their persons the evidences of their claims or liabilities, or trust at their peril, for the details of them, to their recollection. By requiring such particularity, the court, in the language of Ch. J. *Hosmer*, in *Stoughton* v. *Pasco*, 5 *Conn. R.* 450. "instead of effectuating the policy of the recording system, would be instrumental in the perpetration of a hardship most inequitable. The free use and disposal of a person's property, where neither law nor policy forbids, would be inhibited; the exigencies of business, in promotion of the general convenience, disregarded; and the impracticable principle, in all cases, that mortgage conditions must contain within themselves, not reasonable certainty only, but certainty to a certain intent in every particular, adopted." In our opinion, as is also observed by him, "this would be conformable neither to correct principles, nor to our

own adjudications.   The case of *Hart* v. *Chalker*, is not like the present, because there the description pretended to be given of the note, furnished no guide whatever to third persons as to the extent of the incumbrance ; which cannot be said of this mortgage, in which both the nature and amount of the debt are truly stated.

It is said, that the description of the debt in this deed, is not sufficiently definite to guard against the substitution of fictitious claims.   We are, however, unable to perceive how this would be prevented, by requiring a greater particularity of description.

The defendant objects to the note of *April* 23d, 1827, that it was barred by the statute of limitations when the mortgage in question was executed.   It is however found to be unpaid and due ; and it was competent for *Swift*, the maker, to waive the benefit of that statute, which he clearly did, by giving the mortgage for its security.

As to the note of *October* 5th, 1844, it is found, that it was negotiated, by the plaintiff, and subsequently, at his request, paid with his funds, and taken up, by *Swift*, as his agent. The effect of this was, to re-instate the plaintiff as the proprietor of the note ; and he might have recovered on it, in the same manner as if it had never been negotiated.   The objections to these notes are therefore unfounded.

The superior court is advised to render a decree for the plaintiff accordingly.

Church, Ch. J. concurred in this opinion.

Ellsworth, J. dissented, and gave his reasons to the following effect.

I am constrained to dissent from the majority of the court upon one point, and that the main one in the case.   The question involved has been so often discussed, that I shall do little more than to express the conclusion to which I have come.

Two principles are deducible from the decisions of this court as to the certainty necessary in describing securities in a mortgage deed, *viz.* where the securities or debts exist in a known definite form, they shall be described with reasonable and practicable precision, so as to show their identity ; but where, from the nature of the obligation, the indebtedness is

incomplete, and its extent cannot be ascertained, as in the cases of *Stoughton* v. *Pasco* and *Crane* v. *Deming*, and cases of that class, there it shall be sufficient, if there be a suitable reference to the subject matter, so as to put an enquirer for further information upon a certain track. These principles are essential to the preservation of this important statute. A general clause, in the case of a known definite debt and existing securities, is not enough. That should be done in such a case, which will enable third persons to know what are the specific incumbrances on the land; and the description must not be so general and indefinite as that anything and everything may be brought within it, according to the emergency.

Suppose *Howlett*, instead of attaching the property before any bill brought by the plaintiff, had concluded to take out execution upon his judgment against *Swift*, and to levy it upon *Swift's* equity of redemption in the property mortgaged to the plaintiff: in such case, it would be necessary for him to obtain the precise amount of the incumbrance; and how is he to do that? He makes inquiries, and finds certain notes in favour of the plaintiff, ascertains the amount of them, and the plaintiff's book account, and discovers that their amount is less than the sum of 1500 dollars; what then is to be done? Shall he levy, subject to that amount? If he does, he has no security that other notes may not afterwards appear to sweep away at least a portion of his equity of redemption. Shall he levy, subject to the 1500 dollars and interest? That amount may prove too large, and hence his levy be void.

The present is the case of a definite debt and specific securities; but in looking upon the deed, we find nothing definite or specific. What is the amount due on book—itself a form of indebtedness very broad? Is it 10 dollars, or 1000 dollars? How much is due by note? How many notes are there? What are their dates? When payable and to whom given? In my judgment, it avails nothing, that the mortgagor gave the draftsman all the information he had; though I can scarcely believe he could be so ignorant. He should have been furnished, if need be, with definite knowledge, since the creditor chose to leave to the debtor the giving of the security in the creditor's absence. Here we have "a book debt, and several notes, to the amount of 1500 dollars, or *thereabouts*." Now, suppose they should amount to 1600 dollars; will not

the specific notes and all the book debt be covered by the description? But if it be true, that the mortgage is good only for 1500 dollars, my difficulty still remains; for then there is little or nothing more than a gross sum, without a description of securities.

To sanction the validity of such a decree, it seems to me will be equivalent to saying, that the condition need never describe the character of the indebtedness, whether by bond, bill, or note; and that, in all cases, it will be sufficient to say, the mortgagor owes a gross sum, or *about* so much.

WAITE, J. concurred in these views.

HINMAN, J. gave no opinion, not having been present when the case was argued.

Decree for plaintiff.