## DERRY BANK *v.* WEBSTER.

Amendments of the extent of executions may be allowed as against third persons, where the returns contain something to amend by.

It is not essential that the return upon an execution should recite the previous attachment upon mesne process.

Where an officer, having two executions against a debtor, gives notice at the same time of a sale of his right of redeeming certain lands on both executions, fixing the sale at the same time and place;—*Held,* such notice was valid in respect to a sale on the second execution, made subject to the previous sale on the other.

Where E agreed to sell his farm to W, and a part of the price was paid by giving up to E certain notes against E and another, and the completion of the sale was deferred until the grantor and his wife should execute a deed, and it should be put on record;—*Held,* that the sending such deed to the registry to be recorded was not a valid delivery against an intervening attachment, unless the register received it as the agent of the grantee, or some other act of acceptance by the grantee was shown.

THIS is a bill in equity, and the bill, answers and proofs sufficiently appear in the opinion of the court.

*H. F. French,* for the plaintiff.

*James W. Emery,* for the defendants.

BELLOWS, J.    This is a bill in equity by the Derry Bank against John G. Webster and Nathaniel F. Emerson.   The plaintiff claims title to certain lands in Chester, formerly the property of said Emerson, by virtue of the levy of executions against him, one in favor of the Carroll County Bank, and the other in favor of one Barnes; the bill alleging a lien upon said lands, by attachment made December 17, 1857, and a levy in due time to preserve it; and a transfer of the title so acquired to the plaintiff.

The bill states that Webster claims title to the same land by deed from the said Emerson, dated November 16, 1857, but that the deed was not in fact delivered until after the attachment, and that the price was not paid until after the attachment and notice of it; and, also, that the conveyance, whenever made, was fraudulent and void

as to Emerson's creditors; and the plaintiff prays that the aforesaid deed of November 16, 1857, be decreed to be void.

To the title of the plaintiffs, as derived from these levies, the defendants make several objections, which will first be considered.

In the first place they contend that the debtor lived in the county where the lands lie, as appears by the execution itself, he being described as of Chester; and yet the return does not state any notice to him, or that he lived out of the county, and not within twenty miles of the property. Upon examining the return upon the execution in favor of the Carroll County Bank against said Emerson, this defect appears to exist, but the plaintiff proposes to prove that the debtor did, at the time, live out of the county, and more than twenty miles from the lands, and to amend the return accordingly; and we are of the opinion that such amendment may properly be made. In the return it is stated that notices of the sale were posted up in town, and that a notice was published in the county paper, which would be a proper mode of proceeding when the debtor lived out of the county, and more than twenty miles from the lands; and in the return of an extent of the same execution upon other lands in the same county, it is stated that the debtor did not so reside in the county, or within twenty miles from the property.

Under these circumstances we think enough was shown to render it probable that the requisitions of the law had been complied with, or, in other words, enough to amend by. *Whittier* v. *Varney,* 10 N. H. 301; *Gibson* v. *Bailey,* 9 N. H. 168; *Baker* v. *Davis,* 19 N. H. 336; *Buck* v. *Hardy,* 6 Greenl. 162; *Johnson* v. *Day,* 17 Pick. 106; *Hovey* v. *Wait,* 17 Pick. 196; *Childs* v. *Barrows,* 9 Met. 413.

The next objection arises on the return of the sale of the equity of redemption in the lands mortgaged to Green. The land is described as in two parcels, and the copy of the return, as certified by the clerk of the court, after setting out both tracts, the right of redeeming which is alleged to have been seized and sold, says, " the same tract of land being subject to a mortgage," &c., instead of the same tracts, &c.

On the part of the plaintiff it is alleged that the original execution and return were destroyed by the fire which burned the Carroll county records, and that, as recorded in the registry of deeds in Rockingham county, the word " tracts" instead of " tract" is used, and we think that the certified copy produced is not conclusive, but that, upon satisfactory evidence being furnished, the court have power to allow a correct copy of the execution and return to be filed in place of the one destroyed.

It is urged, also, that the sale was not at the expiration of thirty days' notice, but of thirty-one days; but without counting the day of posting the notice, the sale was on the day after the expiration of thirty days, excluding the Sunday, which happened to be the thirty-first day, and the sale, therefore, was properly on the following day.

Another objection is, that the return upon the Carroll County Bank execution does not recite any attachment upon the mesne

process, but we do not think it essential that it should. *Goodall* v. *Rowell,* 15 N. H. 573. In this case it is laid down that such reference is not necessary in the deed or levy, and that in this respect it stands like an execution upon land previously attached. But the copy of the return as certified by the clerk is of a sale of the right possessed by the debtor, on the nineteenth day of December, when the attachment appears to have been made on the seventeenth, and the return, as recorded in the Rockingham county registry, so states it; and we think that, upon satisfactory proof that the return referred to the 17th of December, a copy may be filed accordingly, as in the other case.

It is further objected that the notice of the sale upon the Barnes execution was defective, because it contained no reference to the deed to the *Carroll County Bank,* to which the sale, as appears by the return, was in fact subject. On this point the facts are that having in his hands the two executions against Emerson, before described, the officer posted notices on the 24th day of May, 1860, of a sale on the 25th day of June following, upon both executions, of the debtor's right to redeem the land in question, alleged to be under mortgage to Green, and on said 25th day of June he sold the equity upon the Carroll County Bank execution, and then sold it again upon the Barnes execution, but subject to the other sale; and we are unable to perceive any valid objection to the proceeding, nor is any authority cited or found by us to sustain the objection. On the contrary, it is quite clear that the notice, at the time it was issued, was sufficient, and we see nothing in the fact that a further incumbrance had afterward intervened, that would render the notice invalid, and require a new seizure and notice, at the risk of losing the lien. The object of the law requiring the notice was, of course, to give publicity to the sale, to insure a fair price for the property, and there is no reason to suppose that fewer persons would be attracted to attend the sale for want of notice of the further incumbrance. In the case of a fraudulent over statement in the notice, of an outstanding incumbrance, designed to prevent competition, the sale would probably be held invalid; but if correctly stated at the time, it ought not to be affected by a subsequent payment by the debtor of part of the mortgage debt, and yet this would make a stronger case than the one before us. For these reasons we are satisfied that the notice and sale were valid, and upon making the amendments indicated the levies must be adjudged good.

This brings us to a consideration of the title of Webster as derived from the deed of November 16, 1857, and the first question is, was the deed delivered before the attachment? On this point the bill charges that the deed, although dated November 16, 1857, and recorded December 17, 1857, was not in fact delivered to Webster, or any person for him, until long after it was recorded, and after the attachment. The answer of Webster states a bargain made November 16, 1857, for the farm, at $6,300; $1,353 to be paid in the note of Emerson and Fitz, two notes of Webster in one and two years, and the balance, after deducting the amount of an outstanding mortgage, to be paid in cash; and that, in performance

thereof, the Emerson & Fitz note was delivered to Emerson and canceled, and the two $1,500 notes, dated November 16, 1857, made and executed; that, as the wife of said Emerson was not then in Boston, where this business was done, the two notes of $1,500 each and the money were not delivered to said Emerson until Webster was informed that the deed was executed and recorded; that on the 18th of December, 1857, Emerson was in Boston, and informed him (Webster) that the deed of the farm had been made and executed, and put on record, according to arrangement, and therefore he delivered the two notes to him and paid him the balance in cash, or its equivalent.

It will be seen, then, that the bill charges that the deed was not delivered to Webster, or any person for him, until after the attachment, and Webster's answer does not affirm that it was; and, therefore, the allegations in the bill not being denied are admitted by the 8th rule in chancery. Webster's answer goes no farther than to allege the making of the contract of sale, the giving of the note of Emerson & Fitz to Emerson, who canceled it, and the making and executing of the two $1,500 notes, in performance of the contract, but that the two notes and cash balance were not delivered to Emerson until Webster was informed by Emerson, on the 18th of December, that the deed was made and recorded according to arrangement. Here is no allegation that the deed was delivered to Webster, or to any one for him; and what he does state is perfectly consistent with the allegations in the bill that there was no delivery, but that until the attachment the deed remained within the control of the grantor.

It is not stated that it was agreed that the deed should be delivered to the register of deeds for the grantee, or even that upon putting the deed upon record the price should be paid, but simply that the balance was not paid until the grantee was informed of the execution and record. The statement that, on being informed by Emerson that it was executed and recorded according to agreement, the payment was made, falls far short of an allegation that by the agreement it was to be delivered to the register for the grantee, and to take effect on such delivery.

It would seem, then, that upon the bill or answer of Webster, it is to be taken that the deed was not delivered until after the attachment.

If the answer of Emerson as matter of pleading could avail Webster, it is by no means clear that it would amount to an allegation of a delivery of the deed. He states the bargain as Webster does, the delivery and canceling of the Emerson & Fitz note, and the making of the two $1,500 notes, and he says "that by reason of Emerson's wife being in Chester, the conveyance, or deed of said farm, could not be fully executed at that time and place, and hence it was arranged that said Emerson should leave said two notes of $1,500 each, and the amount in cash, in the hands of Webster, until the deed should be executed by said Emerson and his wife, and put on record;" and he goes on to say that the deed was made the next day, but, owing to pressing calls and engagements,

not put on record until December 17. This, it will be perceived, does not deny the allegations in the bill that there was no delivery, but states circumstances from which it might be urged that a delivery could be inferred. It does not, however, state that it was agreed that a delivery to the register should be a delivery to the grantee, or that, on delivery at the registry, the deed should take effect, but simply that the two notes and money should be left in the hands of the grantee, until the deed should be executed by Emerson and wife, and put on record; and it is not stated that on doing that the deed should be deemed to be delivered, or that the register should receive it for Webster; and we think, on the whole, that Emerson's answer falls short of that distinct and explicit denial of the allegations in the bill which is required. As with the answers so we think it is with the proof. Indeed, taking into consideration the refusal of Webster to testify, and the indefinite character of Emerson's statements, we are impressed with the belief that the answers go as far in denial of the allegations of the bill as the actual state of the facts would warrant.

That the mere sending of the deed to the registry for record is not a delivery is well settled; *Barnes* v. *Hatch*, 3 N. H. 304; *Maynard* v. *Maynard*, 10 Mass. 456; *Samson* v. *Thornton*, 3 Met. 281; *Oxnard* v. *Blake*, 45 Me. 602; even although the grantor intended it to take effect; for an acceptance by the grantee, express or implied, is necessary. 4 Kent Com. 455, 456; *Oxnard* v. *Blake*, 45 Me. 602, note, and cases before cited. *Jackson* v. *Phipps*, 12 Johns. 418. In this case it had been agreed between a creditor and debtor that the latter should give the former a deed of his farm as security, and accordingly the debtor made and executed the deed, and sent it to the registry to be recorded, without the grantee, or any one for him, being present, or receiving the delivery of it, and it was held that this was no delivery; that a delivery *ex vi termini* imports that there be a recipient. And the case of *Jackson* v. *Dunlap*, 1 Johns. 114, is cited as holding that it is essential to the operation of a deed that the grantee assents to receive it, and that there could be no delivery without an acceptance. So is *Jackson* v. *Richards*, 6 Conn. 619, where it was held that an acceptance is essential, and that there was nothing in the act of recording equivalent to a delivery. To make the delivery effectual, the grantor must part with all control over the deed. *Cook* v. *Brown*, 34 N. H. 460, and cases cited; *Doe* v. *Knight*, 5 B. & C. 671. Where a loan and security by way of mortgage of real estate was agreed upon, and the mortgage made and recorded, and shortly after the money paid over and the note given, held, the mortgage took effect from the payment of the money. *Weed* v. *Barker*, 35 N. H. 386; *Parker* v. *Dusten*, 22 N. H. 424. So is *Stevens* v. *Buffalo & N. Y. R. R.*, 20 Barb. 332; *Samson* v. *Thornton*, 3 Met. 281; *Parker* v. *Parker*, 1 Gray 409. A delivery to the register of deeds for the use of the grantee, intending that it shall then take effect as a conveyance, with the assent of the grantee at the time, or afterward, is sufficient. 2 Greenl. Cru. Dig., tit. 32, ch. 2, sec. 64, and note; *Thayer* v. *Stark*, 6 Cush. 11. But a subsequent assent will not prevail against an intervening

attachment, though, as between the parties, it would, by relation, give effect to the deed from the time of such delivery. *Ibid.*, and cases cited; *Harrison* v. *Phillips Academy*, 12 Mass. 461; *Jackson* v. *Rowland*, 6 Wend. 666; *Samson* v. *Thornton*, 3 Met. 381. And it is obvious that this must be so, because, until such assent, the title remains in the grantor. In *Canning* v. *Pinkham*, 1 N. H. 357, *Woodbury*, J., says that all that is incumbent on the grantee in order to perfect the delivery is that he accept or assent to what has been done by the grantor, before the latter revokes his intention to convey, and for this he refers to *Harrison* v. *Phillips Academy*, before cited.

And we think that an attachment by which all the interest of the grantor is taken, would be equivalent to such a revocation.

In the case before us we think that the proof is not sufficient to show a delivery of the deed to the register, or any other person, to the use of the grantee with his assent, with intent to place it beyond the control of the grantor, and to vest a present title in the grantee, but rather to place the parties in position to perfect the sale by payment of the price, and delivery of the deed at a future time, and leaving either party the power to decline to perfect the sale. It is true, the evidence tends to show that part of the price was paid; but that is only evidence bearing upon the question whether the parties agreed to a delivery to the register. *Samson* v. *Thornton*, before cited.

In an additional brief for the defendant, the case of *Merrill* v. *Swift* (18 Conn. 257, 261) is cited and commented upon. In that case a debtor, in failing circumstances, executed a mortgage of certain real estate to a creditor, as security for his debt, and delivered it to a third person, as his deed, for the benefit of the grantee, but without his knowledge at the time, he assenting to it, however, afterwards; and the court held that this was a good delivery, and vested the title at once in the grantee. This is put, however, upon the ground that the deed, being beneficial to the grantee, his assent was to be presumed; but such assent is not to be presumed unless the deed be clearly beneficial to the grantee, as in the case of a conveyance of property as collateral security for a debt, unattended with any conditions for delay or discharge, without full payment. In these and similar cases the assent of the creditor has been held to be presumed until a dissent is shown, for the reason that such security must be beneficial, and creditors would rarely be unwilling to receive it. See *Brooks* v. *Marbury*, 11 Wheat. 96. But it is held otherwise where conditions are annexed, such as that the creditors shall receive their proportion of the assets assigned, in full discharge of their debts, as in *Hurd* v. *Silsby*, 10 N. H. 108; so where the assignee lives out of the State, or his liability is limited to losses caused by his wilful default, as in *Spinney* v. *The Portsmouth Hosiery Company*, 25 N. H. 9; so where the assignment made provision for paying, first, a debt due to the trustee; then such creditors as might, within sixty days, become parties to the assignment; and thirdly, the debt of creditors named in a schedule, as in *Leeds* v. *Sayward*, 6 N. H. 83. In *Camp* v. *Camp*, 5 Conn. 291, where there

was a lease by one who had no title to one who had already a good title, it was held that an acceptance could not be presumed. We think, indeed, that there is at the present time no disposition in the courts to extend the doctrine of presumed assent, for it seems to be the settled doctrine of the English courts, that when a debtor conveys property in trust for creditors, to whom the conveyance is not communicated, and the creditors are not in any manner privy to it, the conveyance operates only as a power to the trustee, which is revocable by the debtor in the same way as if he had given money to an agent to pay his creditors, to whom no communication had been made. *Acton* v. *Woodgate*, 2 Mylne & Keene 492 ; *Smith* v. *Keating*, 6 M. G. & S. 136–158, where it was held that such power was revoked by the subsequent insolvency of the debtor. *Garrard* v. *Lord Lauderdale*, 3 Sim. 1 ; *Harland* v. *Binks*, 15 A. & E. 713 ; and strongly in the same direction is *Williams* v. *Everett*, 14 East 529, and *Oxnard* v. *Blake*, 45 Maine 602 ; see, also, *Wheeler* v. *Emerson*, 44 N. H. 182.

In the case before us the acceptance of the deed must be attended with an obligation to pay the price of the land, and therefore a duty would be imposed upon the grantee to which his actual assent would be necessary. It is not like the cases of conveyances for security without conditions, or grants of property as gifts, where the benefits are clear and unquestionable, but, like the conveyance of property in full discharge of a debt, it is for the grantee to decide whether it is or is not for his benefit, and then to assent or dissent, as he may deem best. The case of *Tompkins* v. *Wheeler*, 16 Pet. 106, also cited by the defendant, is a case of a conveyance to certain preferred creditors, in trust for the payment of their debts, which conveyance, as appears from the answer of the debtor, was sent to the recorder's office for his creditors' use; and the court held that being absolute on its face, without any condition whatever attached to it, and it being for the benefit of the grantees, their assent was presumed. This, then, is like the case in Connecticut, where the conveyance was clearly beneficial. In *Hallick* v. *Scovill*, 4 Gilman, Ill. 177, a deed to a purchaser at a tax sale, who had paid the price, was made and delivered by the officer to a stranger, and it was held that, no acceptance having been shown, there was no valid delivery. The general question was much considered, and the English and American cases reviewed; and in accordance with this decision it is laid down in 2 Washburn on Real Property 580, "that although several of the cases seem to sustain the doctrine that delivery of a deed to a stranger, for the grantee, where it is obviously for his benefit, passes the title at once as an effectual delivery," the better opinion seems to be that no deed can take effect, as having been delivered, until such act of delivery has been assented to by the grantee, or he shall have done something equivalent to an actual acceptance of it."

Our conclusion then is that there was no delivery until after the attachment; and therefore, upon making the amendments indicated, there must be a

*Decree for the plaintiff.*