Hartford,
June,
1822.

Pettibone
v.
Griswold.

PETTIBONE, executor of *Theodore Pettibone*, deceased, *against* GRISWOLD and others.

The condition of a mortgage deed must give reasonable notice of the incumbrance on the land mortgaged. Therefore, where the condition of a mortgage deed was, that the mortgagor should pay all notes which the mortgagee might indorse or give for the mortgagor, and all receipts which the mortgagee might hold against the mortgagor; it was held, that such deed was void, as against the creditors of the mortgagor.

This was a bill in chancery to foreclose the equity of redemption of the defendants in certain mortgaged premises. The bill stated, that on the 3d day of *July*, 1815, *Giles Griswold*, for the consideration of 4000 dollars, conveyed to the plaintiff's testator three pieces of land in *Burlington*, by a deed containing the usual covenants of seisin and warranty, to which there was a condition annexed, that if the said *Giles Griswold*, his executors, &c. should pay said grantee one note of even date therewith, executed to said grantee, for 4000 dollars, payable in six months, at the *Hartford* bank, and all other notes the said grantee might endorse, or give, for said *Griswold*, at the bank or elsewhere, and all receipts said *Pettibone*, deceased, might hold against said the said *Griswold*, then said deed to be void; that before the execution of this deed, the plaintiff's testator, with *Griswold*, executed, for *Griswold's* benefit, two joint notes, one to *Seth Cowles*, dated the 19th of *April*, 1814, for 2173 dollars, 97 cents, payable in six years from the date thereof, with interest annually, and one to *Elijah Cowles* & Co. of the same date, for 296 dollars, 95 cents, payable in six years, with interest annually; for which *Griswold* gave his receipt to the plaintiff's testator, and agreed to exonerate and indemnify him against all claims and demands on account of said notes; that on the 19th of *September*, 1815, *Griswold* also received of the plaintiff's testator sundry notes of hand, amounting 1148 dollars, 62 cents, dated the 21st of *February*, 1815, for which *Griswold* gave his receipt, promising to account with the plaintiff's testator on said joint note to *Elijah Cowles* & Co.; that the mortgaged premises have been levied upon, by several creditors of *Griswold*, and set off to them, respectively, on execution; that *Griswold* had not paid and indemnified the plaintiff's testator for all the notes that he had indorsed or given for him; nor had *Griswold* paid all the receipts the plaintiff's testator held against him, but the notes given by the plaintiff's testator to

*Seth Cowles* and *Elijah Cowles* & Co. remain entirely unpaid by *Griswold*, but have been principally satisfied by the plaintiff's testator, and his estate is liable for the residue, *Griswold* being a bankrupt; nor had *Griswold* ever paid and satisfied his receipt of the 9th of *September*, according to the tenour thereof, but the plaintiff now holds the same unsatisfied. There were other averments, on which no question arose.

To this bill the defendants demurred; and the case was reserved for the advice of all the Judges.

Hartford,
June,
1822.

Pettibone
v.
Griswold.

*Daggett* and *T. S. Williams*, for the plaintiff, contended, 1. That the condition of the mortgage deed embraced the notes given to the *Cowleses*, and created an incumbrance upon the land to the amount of those notes. The object of the mortgage was, to secure *Pettibone* for his liabilities on *Griswold's* account; and it is absurd to suppose, that the parties contemplated future liabilities only, and intended to leave liabilities already existing unprovided for. The terms of the condition do not necessarily restrict its operation to future liabilities.

2. That the receipt of the 19th of *September*, 1815, which was given after the execution of the mortgage, was within the letter of the condition, as well as within the object of the parties.

3. That this mortgage was valid *as between the parties*. It was made upon sufficient consideration; it was without fraud; it was not illegal, or *ex turpi causa*.

4. That it was valid, *with reference to the claims of third persons*. The case stands upon the same footing as though the mortgagee had brought ejectment against the creditors of the mortgagor, who had levied upon the mortgaged premises. In that case, could not the plaintiff recover? What is the objection? What was there in the transaction to prevent the passing of the title to the mortgagee? The conveyance was not made with intent to defeat creditors. There was no secret trust between the parties. Is the equity of a surety so much inferior to that of an ordinary creditor, that a security, fairly obtained, by the former, is to be set aside, to favour the interests of the latter? This will not be claimed. Is the deed void, because the condition extends to future liabilities? Is it essential to the validity of a mortgage to indemnify the mortgagee, that his liability should exist, and the amount be ascertained, at the execution of the deed? No principle of law or equity will authorize such a conclusion; nor has any

decided case gone so far.   The principle would preclude a public officer, required by law to give bonds for the faithful discharge of his duty, from indemnifying his surety by mortgage.   The liability of the surety in such case, is future, contingent, and uncertain in amount; and the creditors of the mortgagor may not be able to ascertain the extent of the incumbrance.   The decisions, so far from supporting the doctrine contended for by the defendants, are directly opposed to it.   In *Orr* v. *Hancock*, 1 *Root* 265. the mortgage was given to indemnify the mortgagee, for acceptances and liability as surety to an amount uncertain; yet the mortgage was held to cover the amount ultimately requisite to effect a complete indemnity.   In *The United States* v. *Hooe*, 3 *Cranch* 73. 88. a mortgage to save the mortgagee harmless on account of his having become the surety of the mortgagor, and for any notes which he might indorse, for the accommodation of the mortgagor, at the bank, was held to be good.   *Marshall*, Ch J. said, " That the property stood bound for future advances, is, in itself, unexceptionable.   It is frequent for a person, who expects to become more considerably indebted, to mortgage property to his creditor, as a security for *debts to be contracted,* as well as for that which is already due." (*a*)

*W. W. Ellsworth,* for the defendants, contended, 1.  That it was not the intention of the parties to the mortgage, that it should cover the debts now claimed.   The condition embraces, first, a note for 4000 dollars, which is out of the question ; secondly, such notes as the mortgagee should afterwards indorse or give for *Griswold's* accommodation ; and thirdly, such receipts as the mortgagee should afterwards hold against *Griswold.*   The notes given to the *Cowleses,* before the execution of the mortgage, do not come within either description.   The receipt of the 19th of *September,* was given after the execution of the mortgage ; but it was given for property, which was to be applied on the note to *Elijah Cowles* & Co., and rests, therefore, on the same footing as that note.

2.  That admitting the debts in question to be included in the condition of the mortgage deed, yet that deed is invalid, as against the creditors of *Griswold,* on principles of general

(*a*) The following cases, though not cited in the argument, are to the same effect.   *Shirras* & al. v. *Craig & Mitchell,* 7 *Cranch* 34. 50, 1.   *Lyle* v. *Ducomb,* 5 *Binn.* 585. 590.   *Hendricks* v. *Robinson* & al. 2 *Johns. Chan. Rep.* 283. 308, 9.

policy, adopted in this state, in relation to the recording of deeds. It is a fundamental principle of our law, that the precise title of the grantee of real estate, with all the conditions and limitations attached to it, should appear upon the record. In this case, the debts and liabilities, which are to determine the amount of the incumbrance, are not only future and contingent, but are unlimited as to the time within which they may accrue, and as to the sum. If this is sanctioned, it will be, of all others, the most convenient mode for a debtor, wishing to lock up his estate from his debtors, to resort to; and it will entirely defeat the policy of the recording law; for of what use will it be to recur to the record, when the instrument recorded conveys no certain information?

<div style="float:right">
*Hartford,*
*June,*
1822.

Pettibone
*v.*
Griswold.
</div>

HOSMER, Ch. J. The plaintiff has brought his bill to foreclose a mortgage, the condition of which is, to secure to the mortgagee the payment of a note accurately described, which, it is presumed, has been paid, as there is no allegation of non-payment; and likewise to secure, "all other notes the said grantee might indorse for or give for said *Griswold*, at the bank or elsewhere, and all receipts said *Pettibone*, deceased, might hold against said *Griswold*." The land mortgaged has been levied on, by executions against the mortgagor; and the controversy is between the mortgagee and the execution creditors.

The notes of hand given to *Seth Cowles* and *Elijah Cowles* and Co. were in existence at the date of the mortgage, and are not included in the condition. They might and ought to have been described, or embraced, by some intelligible description of them. But the expression, "all notes the said grantee might indorse for or give for said *Griswold*," manifestly refers to future contracts, and not to notes then existing. The receipt of the 19th of *September*, 1815, renders it necessary to proceed further in the discussion of this case, or the preceding observations would be conclusive on the whole controversy.

On the extent, to which a mortgage may be taken, I shall not express a definite opinion; as the exigencies of the case do not require it. It undoubtedly may be, for existing debts, existing liabilities, and, perhaps, for debts to be contracted in future. But the *manner* in which it may be done, forms an important consideration. It is the policy of our laws, and experience has demonstrated the wisdom of it, that the titles to

*Hartford,*
*June,*
*1822.*

Pettibone
*v.*
Griswold.

real estate should be registered, for the benefit, not of the parties, but of creditors, and all others interested. "All grants and mortgages of houses and lands shall be recorded at length, by the town clerk ; and no deed shall be accounted good and effectual to hold such houses and lands, against any other person or persons, but the grantor or grantors, and their heirs only, unless recorded as aforesaid." *Stat.* 302. *sect.* 9. It is the object of this law, to prevent fraud, and give security and stability to title. It results, unquestionably, that the condition of a mortgage deed, must give reasonable notice of the incumbrances on the land mortgaged. A creditor is not obliged by law to make inquiry *in pais*, concerning the liens on the property of his debtor ; but on application to the record, he may acquire all the information, which his interest demands. At least, he must have the power of knowing from this source, the subject matter of the mortgage, that his investigation may be guided, by something, which will terminate in a certain result. And what is not of less importance, the incumbrance on the property must be so defined, as to prevent the substitution of every thing, which a fraudulent grantor may devise, to shield himself from the demands of his creditors.

The condition of the deed under discussion, is dangerously indefinite ; and is at war with the policy of the recording system. It embraces all future notes and receipts, without the designation of any ; and baffles the inquiry of creditors and others, relative to the condition of the mortgaged estate. A condition to a deed made to secure all future supplies, debts and liabilities, of every possible nature and description, would not be more lax and indefinite. The creditor could know nothing from an examination of the record, and must be cast on his debtor for information, the very person who would be least inclined to give it : and successive obligations, fictitious or actual, might be made to lock up his land, in defiance of every claim against him.

I am well aware, that absolute certainty is not always to be expected, from an examination of the records of land titles ; but there always may and ought to be a certain object, after which suitable inquiries may be made. A mortgage may be given to indemnify a person from damages arising by reason of his having become the surety of another, in the office of sheriff or collector ; or as administrator on an estate. In all these cases, an inquiring creditor cannot know from the town record

the precise incumbrance; but he has notice of certain definite facts, which point to, and guide him in, the necessary investigation on the subject. Cases of this description must not be confounded with conditions to deeds, which neither communicate any certain information, nor designate any track, in pursuance of which, information may be obtained.

The other Judges were of the same opinion.

Judgment to be entered for defendants.