DART AND BOGUE COMPANY, INC. v.
MILTON O. SLOSBERG
(12942)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and F. HENNESSY, Js.

Argued January 14—decision released March 24, 1987

*Cheever Tyler,* with whom was *Penelope I. Bellamy,* for the appellant (plaintiff).

*David S. Pickett,* for the appellant (Official Unsecured Creditors Committee of Dart & Bogue Company, Inc.).

*Joseph B. Collins,* pro hac vice, with whom were *Patricia H. Modzelewski* and, on the brief, *Joseph H. Reinhardt,* for the appellee (defendant).

*Theodore M. Space, Ira H. Goldman, Coleman H. Casey* and *David L. Huntoon* filed a brief for the Connecticut Attorneys Title Insurance Company as amicus curiae.

PETERS, C. J. The sole issue in this case, on certification from the United States District Court, is whether certain mortgages, which fail to state the maximum term of the obligation they secure, are invalid against subsequent lien creditors under Connecticut law. The plaintiff, Dart & Bogue Company, Inc., is a debtor-in-possession under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. Exercising the powers of a

trustee in bankruptcy under 11 U.S.C. § 544,[1] the plaintiff brought an adversary proceeding in the United States Bankruptcy Court, District of Connecticut, seeking to invalidate two mortgages on its real property held by the defendant, Milton O. Slosberg. The plaintiff moved for summary judgment on its complaint alleging that the mortgages were unenforceable, under General Statutes § 49-31b (a), because they failed to "furnish information from which there can be determined the maximum term" of the note they purported to secure. In its ruling on that motion, the bankruptcy court determined that the plaintiff's claim involved an "unsettled issue of state law." Accordingly, with the consent of the parties, the proceeding was removed to

---

[1] Title 11 of the United States Code, § 544, provides in relevant part: "TRUSTEE AS LIEN CREDITOR AND AS SUCCESSOR TO CERTAIN CREDITORS AND PURCHASERS.

"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

"(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

"(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

"(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

Under 11 U.S.C. § 1107 (a), a chapter 11 debtor-in-possession, such as the plaintiff, may exercise the powers of a trustee under § 544.

The Unsecured Creditors Committee in the plaintiff's chapter 11 case is a party in the plaintiff's bankruptcy proceeding; see 11 U.S.C. § 705; and, therefore, a party to the certification question before this court. Its arguments in favor of invalidating the defendant's mortgages are substantially similar to those of the plaintiff.

the district court, which certified to this court[2] the question of the validity of the defendant's mortgages under Connecticut law.[3]

The certified question requires us to consider the impact of General Statutes § 49-31b (a) upon the mortgages held by the defendant. The statute provides: "A mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined the date, principal amount and maximum term of the note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note."

The following facts underlie the certified question. The defendant's two mortgages secure a $1.45 million

---

[2] General Statutes § 51-199a, the Uniform Certification of Questions of Law Act, provides in relevant part: "UNIFORM CERTIFICATION OF QUESTIONS OF LAW ACT. (a) This section may be cited as the Uniform Certification of Questions of Law Act.

"(b) The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States or a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of any of the courts referred to in subsection (b) of this section upon the court's own motion or upon the motion of any party to the cause."

[3] The certified question stated the issue as follows: "Whether the mortgage deed dated November 13, 1980, from Dart & Bogue Company, Inc. f/k/a Arctos Corporation to Milton O. Slosberg and the mortgage deed dated March 11, 1980 [sic], from Dart & Bogue Company, Inc. f/k/a Arctos Corporation to Milton O. Slosberg are valid and enforceable in light of the provisions of Section 49-31b (a) of the Connecticut General Statutes." Although the certified question asks us to consider the general validity of the defendant's mortgages under applicable Connecticut law, the sole issue raised by the parties before this court is whether the mortgages are invalid for failing to state the maximum term of the promissory note. Accordingly, we limit our review to a determination of that particular question. See Practice Book § 4185 (formerly § 3063).

promissory note that the plaintiff[4] executed in the defendant's favor on November 13, 1980. In the first mortgage, which the plaintiff executed on the same day as the note, the plaintiff granted the defendant an interest in certain real property located in the town of Waterford. On March 11, 1981, the plaintiff executed a supplemental mortgage to the defendant. This mortgage purported to encumber an additional tract of land inadvertently omitted from the first mortgage. Each mortgage stated the mortgagee's name and address, the principal amount of the promissory note, and the applicable interest rate, but neither stated the maximum term of the note.[5] The mortgages, unaccompanied by the note, were recorded in the Waterford land records.

Under the relevant provisions of the Bankruptcy Code, 11 U.S.C. § 544, the plaintiff is entitled to assert the legal rights of a subsequent lien creditor with respect to the defendant. The plaintiff argues that § 49-31b (a) sets forth minimum information that mortgages must contain in order to be valid against subsequent lien creditors. Alleging that the failure to state a maximum term in the mortgages constitutes noncom-

---

[4] The named grantor on the mortgage and maker on the note is Arctos Corporation. Arctos Corporation is the plaintiff's prior name. On this certification, we treat Arctos and the plaintiff as the same entity.

[5] The relevant provision, identical in both mortgages, is as follows:

"THE CONDITION OF THIS DEED is such that whereas the Grantor is justly indebted to the Grantee in the amount of ONE MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS ($1,450,000.00) by virtue of its promissory note of even date with this instrument, by which note, for value received, the Grantor promises to pay to the order of the Grantee said sum with interest at the rate of ten (10) percent per annum from the date of said note, payable upon the unpaid principal balance until fully paid."

With regard to the supplemental mortgage, the reference to the note "of even date with this instrument" is obviously incorrect, since the supplemental mortgage was executed on March 11, 1981, and the note on November 13, 1980. The plaintiff makes no claim, however, that this mistake has any bearing on the supplemental mortgage's validity.

pliance with this statutory standard, the plaintiff claims that the mortgages are unenforceable against it.

The plaintiff's argument raises two principal issues. The first issue is whether § 49-31b (a) is properly interpreted as setting minimum standards or should instead be construed as a "safe harbor," setting forth adequate, but nonexclusive, means of notifying third parties of the essential elements of a secured obligation. The amicus curiae, the Connecticut Attorneys Title Insurance Company, urges us to view § 49-31b (a) as a "safe harbor," and to hold that the mortgages presently before us satisfy common law standards of validity. The second issue is whether, even accepting the plaintiff's position that § 49-31b (a) imposes mandatory standards, the terms of the mortgages in this case meet the requirements of the statute. The defendant claims that the mortgages do, in fact, comply with the statute. Because we agree that § 49-31b (a) supplements but does not supplant relevant common law standards, and that the mortgages in this case meet common law standards, we need not address the validity of the mortgages under the criteria set out in § 49-31b (a).

I

Whether § 49-31b (a) sets minimum standards, as the plaintiff maintains, or provides a "safe harbor," as the amicus contends, is an issue that this court has not previously addressed. It has, however, been considered in various Superior Court cases. Epitomizing the disagreement manifested in the Superior Court are the opinions of Judge Borden in *Roisman & Rosenberg, P.C.* v. *N.M.I., Inc.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 282051 (September 12, 1983), and Judge Loiselle in *Resnick* v. *Berkowitz,* Superior Court, judicial district of Windham, Docket No. 800022436 (October 4, 1982). In *Roisman & Rosenberg, P.C.,* the court held that § 49-31b (a) "sets

the minimum measure of the validity of a mortgage as against subsequent encumbrancers." In *Resnick*, by contrast, the court interpreted § 49-31b (a) as a non-exclusive route to assuring the validity of a mortgage, and held that "common law principles . . . would still apply in the event any one of the elements recited in the statute was missing." Under the *Resnick* court's construction, § 49-31b (a) is a "safe harbor" provision setting forth sufficient, but not necessary, conditions for giving notice of a secured obligation to subsequent lien creditors. We agree with Judge Loiselle and the amicus curiae that § 49-31b (a) creates a "safe harbor" for real property mortgages and does not not super-sede common law criteria of validity.

We acknowledge, at the outset, that the legislature had the authority to supplant common law notice-giving standards when it enacted § 49-31b (a). The issue, how-ever, is not what the legislature had the power to do but what it manifested its intent to do. The relevant language in § 49-31b (a) is the provision that a mort-gage deed containing, inter alia, "information from which there can be determined the . . . maximum term" of the note secured by the mortgage, "shall be deemed to give sufficient notice of the nature and amount of the obligation . . . ." The plaintiff main-tains that the words "shall be deemed to give sufficient notice" impose a mandatory obligation to furnish the information specified in the statute in order to provide the notice prescribed by the statute. We find this read-ing unpersuasive for a number of reasons, which can be summarized as follows: (1) the customary presump-tion in favor of retaining common law standards; (2) the absence from § 49-31b (a) of language elsewhere employed by the legislature when specific information is made a statutory requirement; and (3) the use in § 49-31b (a) of the phrase "shall be deemed," a phrase often associated with "safe harbor" provisions in other regulatory contexts.

Because the meaning of § 49-31b (a) is not evident on its face, our construction of the statute begins with the presumption that statutory and common law should, where possible, be read in harmony. "A statute should not be construed as altering the common law rule, farther than the words of the statute import, and should not be construed as making any innovation upon the common law which the statute does not fairly express." *Skorpios Properties, Ltd.* v. *Waage,* 172 Conn. 152, 156, 374 A.2d 165 (1976); *State* v. *Kish,* 186 Conn. 757, 764, 443 A.2d 1274 (1982); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 50.01.

In our search for an expression of legislative intent, it is helpful to compare § 49-31b (a) with other statutes governing the validity of mortgages that are contained in chapter 846 of the General Statutes. A particularly illuminating model for comparison is General Statutes § 49-5b, entitled "Required information in a mortgage contingency clause," which sets forth minimum standards for satisfaction of the requirements of the statute of frauds, General Statutes § 52-550. See *Maturo* v. *Scranton,* 177 Conn. 569, 571 n.1, 418 A.2d 928 (1979). Section 49-5b provides that such a clause "shall satisfy" § 52-550 "if such mortgage contingency clause contains at least the following: (1) The principal amount in dollars of the loan the purchaser must obtain to fulfill such contingency; (2) the limit of the time period within which a commitment for such loan must be obtained, and (3) the term of the mortgage expressed in years."

Section 49-31b (a) differs from § 49-5b in several significant respects. One obvious difference is that the title of § 49-31b contains no language to indicate that the information described in the statute is "required." Section 49-5b's title explicitly makes reference to "[r]equired information." Cf. General Statutes § 49-4b

(title makes reference to "Mortgage deed requirements"); General Statutes § 49-10 ("Requirements for assignments of obligations").

Section 49-31b (a) also lacks the mandatory language of § 49-5b. Section 49-31b (a) states that a mortgage deed "shall be deemed to give *sufficient* notice" if it provides the information enumerated therein. (Emphasis added.) Similar language is contained in General Statutes § 49-3, which validates mortgages to secure future advances when they contain stipulated clauses that the statute describes as "sufficiently definite and certain." We have construed § 49-3 to preserve alternate common law rules governing the validity of such mortgages. *Sadd* v. *Heim,* 143 Conn. 582, 589, 124 A.2d 522 (1956).[6] Section 49-5b, by contrast, contains no qualifying language, providing directly that a mortgage contingency clause "shall satisfy" the statute of frauds if it contains the specified provisions. Cf. General Statutes § 49-4b ("If an open-end mortgage meets the requirements of this section, [it] shall secure the obligation of any person who is secondarily liable for an open-end loan . . ."); General Statutes § 49-16 ("The certificate [of foreclosure] shall be recorded in the records of the town where the premises are situated and shall be substantially in the form following . . ."); see generally General Statutes § 49-2 (c).

Section 49-31b (a) describes its standards in words of general rather than specific instruction when it states that a mortgage deed satisfies notice requirements if it "furnishes information from which can be determined" the date, principal amount and maximum term of the underlying obligation. Such open-ended phraseology is inconsistent with legislative intent to supplant the common law. "[G]eneral and comprehensive legisla-

---

[6] *Sadd* v. *Heim,* 143 Conn. 582, 124 A.2d 522 (1956), construed the statutory predecessor of § 49-3, General Statutes § 2970d. The two statutes are identical in all relevant respects.

tion, where course of conduct, parties, things affected, limitations and exceptions are minutely described, indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." 2A J. Sutherland, supra, § 50.05, pp. 440–41; *State* v. *Salafia,* 29 Conn. Sup. 305, 313, 284 A.2d 576 (1971). Again, the contrast with § 49-5b is significant. While § 49-31b (a) describes a general duty to "[furnish] information," § 49-5b specifically enumerates the information that a mortgage contingency clause must contain in order to satisfy the statute of frauds. Cf. General Statutes § 49-4a (b) (requirements of open-ended mortgages held by United States or its instrumentalities); § 49-4b (b), (c) and (d) (requirements for open-end mortgages as security for guaranty of open-end loans).

Because the legislature is always presumed to have created a harmonious and consistent body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter. *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324 (1980). Comparing the language of § 49-31b (a) with that of other statutes governing real property mortgages, we conclude that § 49-31b (a) was not intended to supersede established common law principles regarding minimum notice requirements for the validity of mortgages challenged by third party creditors.

This conclusion is reinforced by a comparison of the text of § 49-31b (a), not with statutes imposing mandatory minimum requirements, but rather with regulations that have been been interpreted to furnish a "safe harbor." Section 49-31b (a) provides that mortgage deeds containing certain information "shall be deemed" to give sufficient notice of the obligations they secure. "[S]hall be deemed" is the operative phrase in

several federal regulations that have been interpreted as stipulating conditions that are sufficient but not necessary for compliance with legally imposed standards. Securities and Exchange Commission Regulation D, for example, which provides an exemption from securities registration requirements for certain types of securities offers and sales, provides in part: "Offers and sales of securities by an issuer that satisfy [enumerated conditions] *shall be deemed* to be transactions not involving any public offering . . . ." (Emphasis added.) 17 C.F.R. § 230.506 (a) (1986); see *Securities Industry Assn.* v. *Board of Governors,* 807 F.2d 1052, 1064 (D.C. Cir. 1986) (construing Regulation D as "safe harbor"). Similarly, a United States department of labor regulation governing employers' reporting and disclosure of information relating to employee pension plans provides: "The administrator of a pension plan . . . *shall be deemed* to satisfy [such provisions]" by complying with the conditions enumerated in the regulation. (Emphasis added.) 29 C.F.R. § 2520.104-23 (b) (1986); see *Barrowclough* v. *Kidder, Peabody & Co.,* 752 F.2d 923, 932 (3d Cir. 1985) (construing regulation as a "safe harbor"). These regulatory analogies support a construction of § 49-31b (a) as a "safe harbor" provision. See generally 2A J. Sutherland, supra, § 53.03.

The plaintiff cites the legislative history of § 49-31b (a) as evidence that the legislature intended the statute to replace applicable common law standards. In the legislative debate on House Bill No. 5630, now designated as § 49-31b (a), it was noted that the bill was intended to have no effect on mortgages executed and recorded before the bill became law.[7] The plaintiff's

---

[7] The relevant portion of the legislative history is set forth herein:

"The Clerk: Calendar 614. Substitute for House Bill No. 5630, an act concerning mortgage deeds with respect to subordination clauses and notes.

"The Speaker: Gentleman from the 146th.

"Rep. Elmer W. Lowden (146th): Mr. Speaker I move acceptance of the Joint Committee's favorable report and passage of the bill.

argument, that "[o]nly if the legislature had thought that it was setting new standards" would legislators have been concerned about the effect of the bill on pre-existing mortgages, is speculative at best. While the floor debate does evince a legislative intent that

"The Speaker: Questions on acceptance and passage. Will you remark?

"Rep. Elmer W. Lowden (146th): Mr. Speaker, Section 1 of the bill makes it clear that an instrument affecting Real Property may provide therein that it be subordinate to future mortgages without the necessity of a subsequent instrument affecting such organization. Section 2 of the bill obliges that a mortgage deed shall constitute a valid lien on the premises described therein if the note is secured by said mortgage and sufficiently described therein by reference to the date the principal amount thereof and the maximum term thereof; namely, the maturity date. I urge passage of the bill Mr. Speaker.

"The Speaker: Gentleman from the 136th.

"Rep. Alan H. Nevas (136th): Mr. Speaker, the Clerk has an amendment and I would ask that he call LCO 2546.

"The Clerk: House Amendment Schedule 'A' offered by Mr. Nevas of the 136th.

"The Speaker: Do you care to summarize or wish it read[?]

"Rep. Alan H. Nevas (136th): I would move the amendment, Mr. Speaker and ask that it be read.

"The Clerk: In line 17 after the comma before the word 'whether' insert an opening bracket. In line 19 after the comma and before the word 'which' insert a closing bracket.

"The Speaker: The House Amendment 'A'. Will you remark?

"Rep. Alan H. Nevas (136th): Mr. Speaker, the purpose of this amendment is to merely delete that portion of Section 2 which would validate existing mortgages. It's my feeling and I discussed this with Rep. Healey and with Rep. Lowden that this bill should apply only to future mortgages and not validate existing mortgages and they concur.

"The Speaker: Remark further on Amendment 'A'? Gentleman from the 146th.

"Rep. Elmer W. Lowden (146th): Mr. Speaker, I have no objection to the amendment and will, in fact, support it.

"The Speaker: Remark further? If not, the question is on acceptance of House Amendment 'A'. All in favor signify by saying 'Aye'. Opposed. House 'A' is adopted. Ruled technical. . . ." 19 H.R. Proc., Pt. 5, 1976 Sess., pp. 2096-98.

Later in discussion of the same amendment, one representative asked whether the effect of House Bill No. 5630 was to invalidate previously existing mortgages. Representative Lowden replied: "Not unless they are invalid on the face of them. We haven't done anything to disturb them. They remain at status quo." 19 H.R. Proc., Pt. 5, 1976 Sess., p. 2149.

§ 49-31b (a) have only prospective application, it does not aid our resolution of the question of whether the statute was intended to supplant the common law.[8]

We conclude that § 49-31b (a) is a "safe harbor" provision that does not preempt common law standards governing the validity of mortgages against subsequent lien creditors. Accordingly, we now address the validity of the defendant's mortgages in light of these common law standards. In our consideration of this question, we acknowledge the substantial assistance furnished to the court by the comprehensive and well reasoned brief of the amicus curiae.

## II

In order for a mortgagee to prevail over the claim of a third party lien creditor, our case law has consistently affirmed the principle that the mortgage deed must provide, on its face, "reasonable notice" of the obligation it purports to secure. *Sadd* v. *Heim*, supra, 585; *Bridgeport Land & Title Co.* v. *Orlove Co.*, 91 Conn. 496, 498–99, 100 A. 30 (1917); *Pettibone* v. *Griswold*, 4 Conn. 158, 162 (1822). The purpose of the notice requirement is to prevent subsequent third parties from being defrauded or otherwise misled by inaccuracies and omissions in the record that conceal the true nature of the secured obligation. *Sadd* v. *Heim*, supra; *Bridgeport Land & Title Co.* v. *Orlove Co.*, supra, 499; *Matz* v. *Arick*, 76 Conn. 388, 391, 56 A. 630 (1904); see 2 M. Merrill, Notice (1952) § 1067. It is not necessary, however, that a mortgage deed recite with par-

---

[8] We note, however, that the originally proposed version of General Statutes § 49-31b (a); Raised Committee Bill No. 5677, General Assembly, February Sess., 1976; included a statement of purpose which provided, inter alia, that the bill was intended to clarify that the information included on certain federally sponsored mortgage forms would satisfy common law notice-giving requirements. The statement of purpose is additional evidence that § 49-31b (a) was intended to supplement, rather than supplant, common law standards.

ticularity all of the details of the underlying transaction. "The object of the [mortgage] is to identify the note or debt secured by the mortgage and give reasonable notice of the extent of the encumbrance. All the terms of the note are not essential to that object; hence all need not be stated." *Winchell* v. *Coney,* 54 Conn. 24, 27, 5 A. 354 (1886); *Peoples Savings Bank* v. *Corrado,* 151 Conn. 388, 391, 198 A.2d 209 (1964); *Lampson Lumber Co.* v. *Chiarelli,* 100 Conn. 301, 309, 123 A. 909 (1924). Errors and omissions in the recorded mortgage that would not mislead a title searcher as to the true nature of the secured obligation do not affect the validity of the mortgage against third parties. 2 M. Merrill, supra.

The "reasonable notice" necessary to prevent the misleading of subsequent lienors includes, at minimum, notice of the "nature and amount of the encumbrance which the mortgagor intends to place upon the land." *Sadd* v. *Heim,* supra; *Peoples Savings Bank* v. *Corrado,* supra; *Bridgeport Land & Title Co.* v. *Orlove Co.,* supra, 497; *Merrills* v. *Swift,* 18 Conn. 257, 265 (1847). The "nature" of a secured debt includes such fundamental characteristics as whether the debt is absolute or contingent, liquidated or unliquidated, or whether it is given to secure an existing liability or future advances. *Sadd* v. *Heim,* supra, 585–86; *Merrills* v. *Swift,* supra. The "amount" of the debt is the dollar value of the obligation secured, to the extent that it can be ascertained at the time the mortgage is executed. If the debt cannot be definitively ascertained at that time, "such data must be set out with respect to that debt as will put anyone interested in the inquiry upon a track leading to discovery . . . ." *Sadd* v. *Heim,* supra, 586; *Hamilton* v. *Nutt,* 34 Conn. 501, 504 (1868); 1 L. Jones, Mortgages (8th Ed. 1928) § 1042.

The plaintiff's claim that the defendant's mortgages are invalid is based on the mistaken premise that "[o]ur

recording system is predicated upon the principle that one searching the land records can learn *all he needs to know* about the ownership of the land and its encumbrances from the records themselves." (Emphasis added.) This argument overstates the purpose of record notice. The record need not recapitulate all the particulars of a secured obligation, provided it includes enough information to allow subsequent creditors, "by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the incumbrance." *First National Bank* v. *National Grain Corporation,* 103 Conn. 657, 663, 131 A. 404 (1925). A creditor who wants to know all of the terms of a secured obligation may inquire of the parties themselves, or examine the note or other instrument evidencing the obligation. *Winchell* v. *Coney,* supra, 30–31; see *First National Bank* v. *National Grain Corporation,* supra; *Pettibone* v. *Griswold,* supra. In modern secured lending, such inquiry is prudent as a matter of course. A potential secured creditor may wish to know, for example, whether a mortgagee has exercised rights under an acceleration clause, or whether contemplated future advances have in fact been made, or whether a mortgagor has exercised rights to extend or renew a promissory note. No creditor can expect to glean all of this information from the record alone. The record is the starting point for inquiry, not, as the plaintiff claims, the starting and ending point.

Our case law elucidates the circumstances in which a subsequent lien creditor can legitimately complain that a mortgage has failed to provide reasonable notice of the nature and amount of the secured obligation. Mortgages have been held invalid for: (1) misidentifying a future obligation as a debt currently due; *Sadd* v. *Heim,* supra; *Matz* v. *Arick,* supra; (2) misidentifying a contingent obligation as an absolute obligation; *North* v. *Belden,* 13 Conn. 376 (1840); *Sanford* v.

*Wheeler,* 13 Conn. 165 (1839); (3) misidentifying a promise to perform future services as a promissory note for a sum certain; *Bramhall* v. *Flood,* 41 Conn. 68 (1874); (4) failing to state the amount of the secured debt when the debt could be definitively ascertained; *Hart* v. *Chalker,* 14 Conn. 77 (1840); (5) failing to define the nature and maximum amount of future advances purportedly secured; *Bridgeport Land & Title Co.* v. *Orlove Co.,* supra; and (6) claiming security in an amount in excess of the actual amount due. *McKnight* v. *Gizze,* 107 Conn. 229, 140 A. 116 (1928); *Ives* v. *Stone,* 51 Conn. 446 (1883). In all of these cases, the omission or misstatement in the mortgage obscured the nature or amount of the secured obligation, potentially misleading subsequent lien creditors relying on the record.

The plaintiff's sole challenge to the validity of the defendant's mortgages is that they fail to state the maximum term of the promissory note. Failure to state the maximum term of a promissory note, however, does not, of itself, render a mortgage invalid. See *King* v. *Kilbride,* 58 Conn. 109, 109–10, 119, 19 A. 519 (1889); *Merrills* v. *Swift,* supra, 266–67; see also *Lampson Lumber Co.* v. *Chiarelli,* supra, 312 (no invalidation for failure to state time period for performance of obligation secured by mortgage); *Winchell* v. *Coney,* supra, 27 (no invalidation for failure to state terms for payment of interest); see generally 9 G. Thompson, Real Property (1958 Replacement) § 4744, p. 373.

We reiterate that a mortgage need not set forth all of the terms of the underlying obligation provided that it gives notice of the nature and amount of the obligation, so that subsequent lien creditors are not misled. The plaintiff has expressly disavowed any claim that the mortgages in this case defrauded or otherwise misled subsequent lien creditors. We conclude, there-

fore, that the mortgages are not invalid under our common law for failure to state the maximum term of the note.

The question certified to us from the district court asked us to determine whether the defendant's mortgages "are valid and enforceable in light of the provisions of section 49-31b (a) of the Connecticut General Statutes." Having concluded that § 49-31b (a) does not supplant common law standards for the validity of mortgages, and that the defendant's mortgages are valid under those common law standards, we answer the certified question: "Yes."[9]

No costs will be taxed in this court to either party.

In this opinion the other justices concurred.

---

[9] Our conclusion that the defendant's mortgages are valid under common law criteria makes it unnecessary to determine whether they would also be valid under the "safe harbor" provisions of General Statutes § 49-31b (a). Specifically, we do not address the defendant's argument that, because the mortgages stated the name and address of the mortgagee, they satisfied § 49-31b (a) by providing "information from which there can be determined" the maximum term of the note. We note, however, that such an interpretation would be consistent with the provisions for record notice of security interests in personal property under Article 9 of our Uniform Commercial Code; see General Statutes § 42a-9-401 et seq.; which our legislature enacted in 1959, fifteen years before it enacted § 49a-31b (a).