[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Naugatuck Savings Bank (NSB) brings this action seeking to foreclose a mortgage given by the defendant Cynthia Sodlosky of an undeveloped parcel of land in Middlebury, Connecticut. Plaintiff's complains in two counts; the second count is directed against Cynthia Sodlosky. In that count, NSB alleges that, on March 18, 1988, Anthony T. Fiorenzi and Edward J. Sodlosky III (Cynthia's husband) signed a note by which they promised to pay to the order of NSB the sum of Three Hundred Sixty-One Thousand Eighty ($361,080) Dollars, together with interest thereon. NSB also alleges that the note "acted as a commercial line of credit securing to the plaintiff its obligations pursuant to an original and subsequent letter of credit issued on behalf of Edward J. Sodlosky III and Anthony T. Fiorenzi to the Borough of Naugatuck."
Further, NSB claims that by giving her mortgage, Cynthia Sodlosky secured the note. NSB also alleges that installments of principal and interest due on the note have not been paid; that the bank has demanded payment of Edward Sodlosky and Fiorenzi; and that the bank has accelerated the note and CT Page 2010 declared the entire loan balance due. NSB alleges that it has paid $253,000 to the Borough of Naugatuck "upon the letter of credit alleged in paragraph 2 hereof."
NSB seeks a foreclosure of the mortgage given by Cynthia Sodlosky on the basis of its allegations.
At trial the parties stipulated to the following facts: Beginning in January, 1987, and at all times relevant, Northland Home Developers and General Contractors, Inc. (hereafter Northland) and Edward J. Sodlosky III (hereafter Sodlosky) were the owners of approximately thirteen acres of land located on Horton Hill Road in Naugatuck, Connecticut.
On or about December 7, 1989, the Planning and Zoning Commission for the Borough of Naugatuck approved the Horton Hill property as a twenty lot subdivision, to be called Northland Homes Estates.
At all times relevant, Anthony T. Fiorenzi was a principal of Northland. On or about March 7, 1988, Fiorenzi and Sodlosky applied to the plaintiff NSB for a loan of Fifty Thousand (50,000) Dollars for "seed money" for their intended subdivision development. At the same time, they also sought a $361,080 letter of credit to be issued to the Borough of Naugatuck in satisfaction of Naugatuck's road bond requirement for the subdivision.
NSB approved both requests subject to certain terms and conditions. As to the $50,000 loan, the bank issued its check in the amount of $50,000 on March 18, 1988 payable to Attorney Edward G. Fitzpatrick for Anthony Fiorenzi, Judith D. Fiorenzi (Fiorenzi's wife) and Edward Sodlosky. The three parties signed a commercial demand note. To secure the $50,000 note, Mr. and Mrs. Fiorenzi gave a mortgage of property they owned on Rubber Avenue, Naugatuck. In addition, Fiorenzi and Sodlosky gave a mortgage of their interest in Northland Homes Estates.
As to the requested letter of credit, on March 18, 1988, NSB issued its irrevocable letter of credit #271 to the Borough of Naugatuck in the amount of $361,080. The letter of credit was accepted by the Borough April 11, 1988.
On March 18, 1988, Fiorenzi and Sodlosky signed a promissory note to NSB in the amount of $361,080. The bank CT Page 2011 characterizes this note as a "line of credit" Defendants dispute this characterization. Their note was secured by a second mortgage of Mr. and Mrs. Fiorenzi's Rubber Avenue property and by a second mortgage of the interest of Fiorenzi and Sodlosky in Northland Homes Estates.
On April 22, 1988, Fiorenzi and Sodlosky gave a further mortgage of their interest in the Horton Hill Road property under the terms of a variable interest rate open end mortgage in the amount of $465,000, which was a construction mortgage loan to build out the subdivision. At the same time the parties agreed to subordinate the mortgage given on the Horton Hill Road property to secure the $361,080 note, to the new variable note mortgage.
Sodlosky and Fiorenzi began work on the subdivision in 1988. They used approximately $250,000 of the $465,000 authorized under the terms of the construction loan. However, they ran into trouble when they encountered extensive ledge where their road was intended to go. Their excavator first filed a mechanic's lien and then brought a foreclosure action. It became clear that additional monies would be needed to finish the project.
In August, 1989, NSB agreed to a refinancing package for the Northland Homes Estates project, which consisted of a single loan for $900,000. The application of the proceeds of this loan is set forth in a construction contract (so-called) entered into by Northland, Sodlosky and the excavator Andrew Palker, and signed at the loan closing. Article 10 of the construction contract provided for disbursement of the loan proceeds as follows:
 a) Three Hundred Thousand and 00/100 ($300,000.00) Dollars to pay off existing first and second mortgages;
 b) Two Hundred Thousand and 00/100 ($200,000.00) Dollars to Andrew Palker, Jr. as partial payment toward previous ledge work balance of Four Hundred Ten Thousand and 00/100 ($410,000.00) Dollars;
 c) Twenty Thousand and 00/100 ($20,000.00) Dollars to Northland Homes and Edward J. Sodlosky, III for current outstanding costs due on said Project; CT Page 2012
 d) One Hundred Eighty Thousand and 00/100 ($180,000) Dollars to be assigned to Naugatuck Savings Bank for progress payments on the roadwork, as stated above;
 e) One Hundred Thousand and 00/100 ($100,000.00) Dollars to be assigned to Naugatuck Savings Bank for interest payments on said mortgage;
 f) One Hundred Thousand and 00/100 ($100,000.00) Dollars to be assigned to Naugatuck Savings Bank for progress payments on ledge, as set forth in Article 5 above.
As a result of these disbursements, the $50,000 loan and the $250,000 advance under the construction mortgage were paid in full.
On August 10, 1989, Northland and Sodlosky signed a promissory note for $900,000 and mortgaged their interest in the Northland Homes subdivision to secure the note.
As of August 10, 1989, the Borough of Naugatuck had not made any demand against the letter of credit issued by NSB March 18, 1988. On August 10, 1989, the letter of credit remained in effect according to its terms.
At all times relevant, Cynthia Sodlosky was the wife of Edward Sodlosky and was the sole owner of a parcel of land located in Middlebury, Connecticut, known as Lot #18 in the Falcon Crest Subdivision, Watertown Road. As a condition of entering into the refinancing package, on August 10, 1989, NSB required Cynthia Sodlosky to sign a mortgage of Lot #18, Falcon Crest. The mortgage contained the following terms:
 "Whereas Edward J. Sodlosky III is/are justly indebted to the said grantee in the sum of Three Hundred Sixty-one Thousand Eighty 00/100 Dollars with interest thereon, payable on demand together with reasonable attorney's fees and all costs of collection which the within Grantor has agreed to pledge the herein property as security therefore.
 Now therefore if said note shall be well and truly paid according to its tenor, then this deed shall be CT Page 2013 void, otherwise to remain in full force and effect"
Also on August 10, 1989, NSB entered into an agreement with Fiorenzi and Edward Sodlosky to release Lot #18 Falcon Crest from the letter of credit upon the reduction by $125,000 of the road bond required for Northland Homes by the Naugatuck Planning and Zoning Commission. Cynthia Sodlosky was not a signer of this agreement.
The disbursements described in Article 10 of the construction contract used up all of the $900,000 provided by NSB on August 10, 1989. Nevertheless, the expenditure of at least an additional $70,000 was required for the completion of curbing and the installation of the water main. No provision was made in the construction contract for the payment of an additional $70,000 to cover the cost of this work.
After the August 10, 1989 closing, the project encountered further problems. Because of lack of additional funds, Fiorenzi and Sodlosky were unable to complete the road or to pay for installation of the water main.
On February 5, 1990, the Naugatuck Planning and Zoning Commission reduced the bonding requirements for Northland Home Estates from $361,080 to $253,000, a difference of $108,080. This reduction was not enough to entitle Cynthia Sodlosky's mortgage to be released pursuant to the release agreement entered into August 10, 1989.
On March 18, 1990, NSB's letter of credit #271 lapsed according to its terms.
As of March 18, 1990, the Borough of Naugatuck had not made any claim for payment against the letter of credit #271.
On June 6, 1990, Edward Sodlosky and Fiorenzi signed an application for "the reissue of the letter of credit" with NSB.
On June 13, 1990, NSB issued a new letter of credit to the Borough of Naugatuck #299, in the amount of $253,000. Upon receipt of the new letter of credit, the Borough released the original letter of credit #271 and returned the letter of credit to Naugatuck Savings Bank.
On June 21, 1990, William Iles, of NSB, wrote to Fiorenzi CT Page 2014 and Edward Sodlosky (but not to Cynthia Sodlosky) proposing terms for the issuance of the Bank's new letter of credit in the amount of $253,000. Negotiations took place during the summer of 1990 as evidenced by correspondence dated July 20, July 27, and August 27, 1991 between Iles and the attorney for Northland Homes Estates, Mark Oulette.
On December 21, 1990, Mr. Iles notified the Borough of Naugatuck that NSB would not renew letter of credit #299, which was due to expire March 18, 1991. By letter of the same date, NSB provided a copy of its notice to Northland and Edward Sodlosky.
On February 25, 1991, the Borough of Naugatuck presented its draft to NSB demanding payment of the full amount of $253,000 due under the terms of the letter of credit #299 issued by NSB.
On February 27, 1991, NSB honored its letter of credit and paid the draft in full by bank check #005903.
On March 11, 1991, Mr. Iles, on behalf of NSB notified Northland, Edward Sodlosky and Anthony Fiorenzi that it had paid the draft of $253,000 to the Borough of Naugatuck and requested that those parties make arrangements to pay the bank the sum of $253,000.
When Fiorenzi and Sodlosky failed to pay, NSB began this foreclosure action. Plaintiff's first count seeks to foreclose the mortgage which Mr. and Mrs. Fiorenzi gave of their Rubber Avenue property to secure the $361,080 promissory note signed on March 18, 1988. Judgment has already entered on this first count and NSB has succeeded to record ownership of this property.
The second count of plaintiff's complaint seeks to foreclose the mortgage given by Cynthia Sodlosky August 10, 1990, which was allegedly given to secure the $361,080 promissory note signed by Fiorenzi and Edward Sodlosky on March 18, 1988.
The court also finds that this foreclosure action is strictly between NSB and Cynthia Sodlosky, that is to say, there are no third party encumbrances involved; that Cynthia Sodlosky and her husband were represented by the same attorney at CT Page 2015 closing; and that she acknowledged that signing the mortgage was her free act and deed.
1. Enforceability of the Mortgage
General Statutes 49-4b provides in relevant part:
 (a) If an open-end mortgage meets the requirements of this section, such mortgage shall secure the obligation of any person who is secondarily liable for an open-end loan, including. . . (3) a letter of credit. Such mortgagor's secondary liability for such future advances shall be secured by such open-end mortgage equally with the obligation secured by such mortgage at the time of recording such mortgage deed. . . .
 (b) The heading of such mortgage deed shall be clearly entitled "Open-End Mortgage"
 (c) The loan constituting the underlying obligation for which the mortgagor is secondarily liable, which secondary liability is secured by such open-end mortgage, shall be described in such open-end mortgage deed. A description of such loan meets the requirements of this subsection if such open-end mortgage deed states: (1) The name and address of the person who is primarily liable for such loan; (2) that such underlying obligation specifically permits such advancements and, if applicable, that such advancements are made pursuant to a revolving loan agreement; (3) the full amount of the loan authorized; and (4) the terms of repayment of such loan.
 (d) The secondary liability of the mortgagor shall be described in such open-end mortgage deed. A description of such secondary liability meets the requirements of this subsection if such open-end mortgage deed states: (1) The full amount of the obligation of the mortgagor if such amount is different from the full amount of the loan authorized for the underlying obligation; (2) the date, if any, on which the secondary liability of the mortgagor will terminate; (3) the conditions, if any, which will cause the mortgagor to pay all or part of the loan constituting the underlying obligation; and (4) the CT Page 2016 conditions, if any, which will relieve the mortgagor of liability for all or any part of the loan constituting the underlying obligation or which will release all or part of the mortgaged premises from the lien of such open-end mortgage.
The mortgage signed by Cynthia Sodlosky in favor of NSB does not meet the requirements of General Statutes 49-4b. The mortgage is not entitled "open-end mortgage." The mortgage does not identify the address of Edward Sodlosky, it does not describe the primary debt as open-ended, and it does not set forth the repayment terms of the primary debt. In addition, the mortgage does not state whether the secondary liability is extinguished on the repayment of the letter of credit or on some other repayment or condition.
The mortgage deed merely states that the mortgage secures a debt owed by Edward J. Sodlosky III in the sum of $361,080.00 and that the mortgage will be in effect until "said note" is "paid according to its tenor." No supplementary "note" was attached to the deed.
The plaintiff concedes that the mortgage does not meet the requirements of General Statutes 49-4b. However, the plaintiff argues that, as between parties, a mortgage does not have to accurately describe the debt that it secures, citing Utley v. Smith, 24 Conn. 290, 313, 63 A. 163 (1855) and Burt's Spirit Shop, Inc. v. Ridgway, 215 Conn. 355, 366, 576 A.2d 1267 (1990).
Cynthia Sodlosky argues that the common law rule cited by the plaintiff has been superseded by the statutory requirements of General Statutes 49-4b and that "[f]ailure to comply with Section 49-4b [r]enders the Mortgage. . .[u]nenforceable." Cynthia Sodlosky points out that General Statutes 49-4b
protects secondarily liable persons rather than the original parties to a debt obligation and, consequently, there is a greater need for the debt to be fully identified.
In Dart v. Bogue Co. v. Slosberg, 202 Conn. 566, 573-75,522 A.2d 763 (1987), the court compared General Statutes 31b(a) with other statutes, including General Statutes 49-4b, that related to the validity of mortgages. The requirements of General Statutes 49-4b are mandatory. Id. "`If an open-end mortgage meets the requirements of this section [49-4b], it shall secure the obligation of any person who is secondarily CT Page 2017 liable for an open-end loan, including. . .a letter of credit.'" Id, 574. As in the present case, where the mortgage does not meet these requirements, the mortgage is not enforceable. See Id., 573-74.
The mortgage is also not enforceable because Cynthia Sodlosky's obligations expired with letter of credit #271. The term "note" in the mortgage deed is ambiguous because it could refer either to the promissory note dated March 18, 1988 or letter of credit #271, both of which evidence a debt owed by Edward Sodlosky III in favor of NSB in the amount of $361,080.00. The language in the mortgage deed referring to "said note" is a boilerplate form; therefore, there is no reason to assume the word "note" refers to the promissory note.
Interpretation of a mortgage "is a question of the intent of the parties." Kakalik v. Bernardo, 184 Conn. 386, 393,439 A.2d 381 (1981); Kasper v. Anderson, 5 Conn. App. 358, 361,498 A.2d 132, cert. denied 197 Conn. 818, 501 A.2d 388 (1985). Where the agreement is ambiguous, "`the intention of the parties is to be determined by a fair and reasonable construction of the language used interpreted in light of the situation of the parties, the circumstances connected with the transaction, the motives of the parties and the purposes which they sought to accomplish.'" Nelson v. Nelson, 13 Conn. App. 355, 360,536 A.2d 985 (1988), quoting John F. Epina Realty, Inc. v. Space Realty, Inc., 194 Conn. 71, 77-78, 480 A.2d 499 (1984). "`When there is ambiguity, we must construe contractual terms against the drafter.'" Cameron v. Avonridge, Inc., 3 Conn. App. 230,233, 486 A.2d 661 (1985), quoting Hartford Electric Applicators of Thermalux, Inc. v. Alden, 169 Conn. 177, 182, 363 A.2d 135
(1975).
The court finds that Cynthia Sodlosky understood that the mortgage secured her husband's debt obligation in the amount of $361,080.00 pursuant to letter of credit #271, which expired on March 18, 1990. The plaintiff failed to produce any evidence showing that Cynthia Sodlosky agreed to extend her secondary guaranty of this debt beyond the expiration of letter of credit All correspondence regarding second letter of credit #299 is addressed only to Anthony Fiorenzi and Edward Sodlosky. Where there is no meeting of the minds or agreement, there is no contract. Christensen v. Bic Corporation, 18 Conn. App. 451,458, 558 A.2d 273 (1989); see also Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 414, 446 A.2d 799 (1982). CT Page 2018 Therefore, the court holds that if the mortgage signed by Cynthia Sodlosky were enforceable under General Statutes 49-4b, the mortgage obligation expired when letter of credit #271 expired and that Cynthia Sodlosky did not assent to an extension of her liability.
The mortgage is also not a sufficient memorandum to satisfy the statute of frauds. An agreement to answer for the debt of another falls within the statute of frauds. General Statutes52-550; Huckabee v. Stevens, 32 Conn. Sup. 511, 338 A.2d 512
(App. Sess. 1975), citing E. Paul Kovacs Co. v. Blumgarten,150 Conn. 8, 11, 183 A.2d 844 (1962). "A memorandum does not satisfy the statute of frauds if it lacks essential terms concerning the performance contemplated by the contract." Faloutico v. Maher, 182 Conn. 448, 438 A.2d 710 (1980). "`The function of the statute is evidentiary, to prevent enforcement through fraud or perjury of contracts never in fact made.'" Id., 448-49, quoting Lynch v. Davis, 181 Conn. 434, 439,435 A.2d 977 (1980). The plaintiff has failed to produce written evidence that Cynthia Sodlosky agreed to answer for the debt of Edward Sodlosky beyond the expiration date of letter of credit Because there is no evidence of this essential term, the plaintiff is not permitted to foreclose the mortgage signed by Cynthia Sodlosky for Edward Sodlosky's failure to pay back money extended pursuant to letter of credit #299. General Statutes52-550.
NSB's argument that the mortgage is not within the statute of frauds because of part performance and estoppel is not compelling.
Part performance will take an agreement out of the statute of frauds only if "the conduct alleged to have been induced by reliance on the oral agreement [is] of such character that the `repudiation of the contract by the other party would amount to the perpetration of a fraud.'" (Citation omitted.) H. Pearce Real Estate Co. v. Kaiser, 176 Conn. 442, 443, 408 A.2d 230
(1979).
"[T]he doctrine of estoppel may be applied to prevent the use of that statute to accomplish a fraud." De Luca v. C. W. Blakeslee Sons, Inc., 174 Conn. 535, 544-45, 391 A.2d 170
(1978). In the present case, Cynthia Sodlosky's obligation lapsed with the first letter of credit. Cynthia Sodlosky believed in good faith that her obligation had expired, CT Page 2019 therefore, no fraud is perpetuated by applying the statute of frauds.
Accordingly, judgment is entered in favor of the defendant Cynthia Sodlosky.
2. CUTPA Counterclaim
On August 14, 1991, Cynthia Sodlosky filed a counterclaim for CUTPA, General Statutes 42-110a, et seq.
The majority of superior court decisions hold that CUTPA applies to banks. Economic Development Associates v. Cititrust,3 Conn. L. Rptr. 403, 405 (March 27, 1991, Dranginis, J.) (citing superior court cases that hold CUTPA applies to banks and that hold CUTPA does not apply to banks).
 "In determining whether the practice in question violates CUTPA, courts use the following criteria: "(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers."
Sanghavi v. Paul Revere Life Ins. Co., 214 Conn. 303, 311-12,572 A.2d 307 (1990), quoting Mead v. Burns, 199 Conn. 651, 664-65,509 A.2d 11 (1986).
Cynthia Sodlosky's counterclaim for CUTPA is without merit, as the transaction of a letter of credit secured by a line of credit and a secondary open-mortgage is a standard arrangement in the banking industry. See, e.g., General Statutes49-4b(a)(3). Furthermore, there are no extraordinary facts which would impose a fiduciary duty on NSB to make sure Cynthia Sodlosky understood the transaction. See Stoner Group v. First Bank of West Hartford, 7 Conn. L. Rptr. 163, 165 (July 27, 1992, Aurigemma, J.), citing Dunham v. Dunham, 204 Conn. 303, 320,528 A.2d 1123 (1983) (fiduciary duty of attorney to a client); see also Cooper v. Burby, 7 CSCR 591, 592-93 (April 29, 1992, Satter, State Trial Referee). CT Page 2020
In accord with the foregoing, judgment for the plaintiff may enter on defendants' counterclaim.
WEST, J.